Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Christina A. Humphrey (Cal. Bar No. 226326)
christina@chumphreylaw.com
**CHRISTINA HUMPHREY LAW, PC**
1117 State Street,
Santa Barbara, CA 93101
Telephone: (805) 618-2924
Facsimile: (805) 618-2939

*Counsel for Plaintiffs and Aggrieved Employees*

*[Additional Counsel Listed on Next Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| RAVI WHITWORTH, JAVIER FRIAS, GREG CARRANZA, and JOSHUA ARGUELLES on behalf of themselves, the State of California, and all other aggrieved employees,<br><br>        Plaintiffs,<br><br>    v.<br><br>SOLARCITY CORP. and TESLA ENERGY OPERATIONS, INC.,<br><br>        Defendants. | Case No. 16-cv-01540-JSC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT (PAGA) SETTLEMENT**<br><br>Date:      March 2, 2023<br>Time:     10:00 a.m.<br>Courtroom: Courtroom 8 - 19th Floor<br>Judge:    Jacqueline Scott Corley |

Aaron C. Gundzik (SBN 132137)
aaron.gundzik@gghllp.com
Rebecca G. Gundzik (SBN 138446)
rebecca.gundzik@gghllp.com
**GUNDZIK GUNDZIK HEEGER LLP**
14011 Ventura Blvd., Suite 206E
Sherman Oaks, CA 91423
Telephone: (818) 290-7461
Facsimile: (818) 918-2316

*Counsel for Plaintiffs and Aggrieved Employees*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT
(PAGA) SETTLEMENT
CASE NO. 16-CV-01540-JSC

# **TABLE OF CONTENTS**

NOTICE OF MOTION ............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

    I.      INTRODUCTION ............................................................................................2

    II.     FACTUAL AND PROCEDURAL BACKGROUND............................................3

         A.    Allegations ............................................................................................3

         B.    Litigation and Arbitration ..................................................................5

             1.    Related Cases ........................................................................7

    III.    SUMMARY OF SETTLEMENT TERMS..............................................................7

    IV.    ARGUMENT ....................................................................................................9

         A.    A PAGA Settlement Merits Approval Where It Satisfies the
              Statutory Requirements and Is Fair, Reasonable, and Adequate ...............9

         B.    The Proposed Settlement Is Fair, Reasonable, and Adequate,
              and Should Be Approved ...................................................................11

             1.    Strength of the Plaintiffs' Case ..........................................11

             2.    Risk, Expense, Complexity, and Likely Duration of
                  Further Litigation ................................................................14

             3.    Amount Offered in Settlement.............................................14

             4.    The Extent of Discovery Completed and the Stage of
                  the Proceedings ...................................................................17

             5.    Experience and View of Counsel.........................................18

             6.    Presence of a Governmental Participation ......................19

          C.    The Proposed Service Awards Are Fair and Reasonable .........................20

         D.    The Requested Fees and Costs Are Fair and Reasonable .........................21

         E.    Approval of the Settlement Administrator's Costs Is
             Appropriate. .......................................................................................22

CONCLUSION..............................................................................................................22

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                    **PAGES**

3

*Abelar v. Am. Residential Servs., LLC,*

4
   No. 19 Civ. 726, 2019 U.S. Dist. LEXIS 198772 (C.D. Cal. Nov. 14, 2019) .................. 20, 21

5
*Alvarez v. Farmers Ins. Exch.,*
   No. 14 Civ. 574, 2017 U.S. Dist. LEXIS 119128 (N.D. Cal. Jan. 17, 2017) ........................ 21

6
*Barbosa v. Cargill Meat Sols. Corp.,*

7
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................ 12, 14, 15

8
*Basiliali v. Allegiant Air, LLC,*
   No. 18 Civ. 3888, 2019 U.S. Dist. LEXIS 228250 (C.D. Cal. July 1, 2019) .................. 11, 21

9

10
*Bell v. Farmers Ins. Exch.,*
   115 Cal. App. 4th 715 (2004) ................................................................................................ 20

11
*Bernstein v. Virgin Am., Inc.,*

12
   3 F.4th 1127 (9th Cir. 2021) .......................................................................................... 15, 16

13
*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................................... 19

14

15
*Carrington v. Starbucks Corp.,*
   30 Cal. App. 5th 514 (2014) .......................................................................................... 13, 17

16
*Cellphone Termination Fee Cases,*

17
   186 Cal. App. 4th 1380 (2010) ............................................................................................ 20

18
*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................................ 18-19

19
*Cotter v. Lyft, Inc.,*

20
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................................................... 13

21
*Dudum v. Carter's Retail, Inc.,*
   No. 14 Civ. 988, 2016 U.S. Dist, LEXIS 166881 (N.D. Cal. Dec. 2, 2016) ........................ 21

22
*Epic Systems Corp. v. Lewis,*

23
   138 S. Ct. 1612 (2018) .................................................................................................... 5, 6

24
*Estrada v. Royalty Carpet Mills, Inc.,*
   76 Cal. App. 5th 685 (Cal. Ct. App. Mar. 23, 2022) .......................................................... 13

25
*Fleming v. Covidien, Inc.,*

26
   No. EC 10 Civ. 1487, 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011) ............... 14

27

28

*Ford v. CEC Entm't Inc.*,
   No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) ........................ 14

*G. F. v. Contra Costa Cnty.*,
   No. 13 Civ. 03667, 2015 U.S. Dist. LEXIS 159597 (N.D. Cal. Nov. 25, 2015) ................... 14

*Gunther v. Alaska Airlines, Inc.*,
   72 Cal App. 5th 334 (2021) ...................................................... 16

*Haralson v. U.S. Aviation Servs., Corp.*,
   383 F. Supp. 3d. 959 (N.D. Cal. 2019) ........................................ 11, 16

*Hartley v. On My Own, Inc.*,
   2020 U.S. Dist. LEXIS 154315 (E.D. Cal. Aug. 25, 2020) ............................. 16, 17

*Iskanian v. CLS Transportation Los Angeles, LLC*,
   327 P.3d 129 (Cal. 2014) ........................................................ 6

*Lewis v. Starbucks Corp.*,
   No. 07 Civ. 490, 2008 U.S. Dist. LEXIS (E.D. Cal. Sept. 11, 2008).................... 19

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................. 17

*McLeod v. Bank of Am., N.A.*,
   No. 18 Civ. 3294, 2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018) ................... 16

*Moniz v. Adecco USA, Inc.*,
   72 Cal. App. 5th 56 (Cal. App. 2021) .......................................... 10, 11

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) ................................................... 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................. 14, 18

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .................................................. 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................. 11

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ......................................... 10

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................... 19

*Parr v. Golden State Overnight Delivery Serv., Inc.*,
   2014 Cal. Super. LEXIS 1551 (Alameda Super. Ct. Jul. 10, 2014) .................. 13, 14

v

*Patel v. Nike Retail Servs.,*
 No. 14 Civ. 4781, 2019 U.S. Dist. LEXIS 77988 (N.D. Cal. May 8, 2019) .......... 9, 10, 15, 18

*Perez v. Allstate Ins. Co.,*
 No. 11 Civ. 1812, 2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014) ..................... 19

*Ramirez v. Benito Valley Farms, LLC,*
 No. 16 Civ. 4708,2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25 2017) .................. 16-17

*Rodriguez v. RCO Reforesting, Inc.,*
 No. 16 Civ. 2523, 2019 U.S. Dist. LEXIS 12597 (E.D. Cal. Jan. 24, 2019) ......................... 10

*Ruch v. AM Retail Grp., Inc.,*
 No. 14 Civ. 05352, 2016 U.S. Dist. LEXIS 133832 (N.D. Cal. Sept. 28, 2016) .................. 16

*Starks v. Vortex Industries,*
 53 Cal. App. 5th 1113 (2020) ............................................... 21

*Taylor v. Shippers Transp. Express, Inc.,*
 No. 13 Civ. 2092, 2015 U.S. Dist. LEXIS 191461 (C.D. Cal. May 14, 2015) ..................... 21

*Thieriot v. Celtic Ins. Co.,*
 No. 10 Civ. 4462, 2011 U.S. Dist. LEXIS 44852 (N.D. Cal. April 21, 2011) ..................... 14

*Walsh v. CorePower Yoga, LLC,*
 No. 16 Civ. 05610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017) ..................... 19

**STATUTES**

Cal. Lab. Code section 2699 ............................................... 13

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 16, 2023, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8, 19th Floor of this Court, located 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ravi Whitworth, Javier Frias, Greg Carranza, and Joshua Arguelles ("Plaintiffs"), on behalf of themselves and all others similarly situated, will, and hereby do, move this Court: to approve the Private Attorneys General Act ("PAGA") Settlement Agreement between the Plaintiffs and Defendants SolarCity Corporation (now known as Tesla Energy Operations, Inc. ("Tesla")) and Tesla, settling the representative claims under California law; and grant service awards to each of the four named Plaintiffs.

This Motion is based upon: the Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Approve PAGA Settlement; the Declarations of Attorneys Jahan C. Sagafi, Esq., Christina A. Humphrey, Esq., Daniel R. Rodriguez, Esq., the Declarations of Plaintiffs Joshua Arguelles, Greg Carranza, Javier Frias, and Ravi Whitworth; the Declaration of Sean Hartranft of Settlement Administrator ILYM; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider.  A Proposed Order is submitted herewith.

Dated: January 13, 2023

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     INTRODUCTION

Plaintiffs Ravi Whitworth, Javier Frias, Greg Carranza, and Joshua Arguelles ("Plaintiffs") request approval of a Private Attorneys General Act ("PAGA") settlement under the California Labor Code section 2698, *et seq.*, with Defendants SolarCity Corp. and Tesla Energy Operations, Inc. (SolarCity is now known as Tesla Energy Operations, Inc.) ("Defendant" or "SolarCity" for ease of reference).  Under the Settlement Agreement, SolarCity will pay $1,500,000, with no reversion.  *See* Declaration of Christina A. Humphrey ("Humphrey Decl."), ¶ 42, Ex. 3 ("PAGA Representative Action Settlement and Release Agreement" ("Settlement Agreement")).  The Settlement resolves this action and the overlapping related case *Arguelles v. Tesla Energy Operations, Inc.*, Los Angeles Superior Court Case No. 20-STCV-41704 ("*Arguelles*"), the allegations from which are included in the Fifth Amended Complaint, ECF No. 186.  The Settlement does not resolve or release any non-PAGA claims, including for wages, premium pay, business expenses or statutory penalties.

The proposed settlement is fair, reasonable, and adequate based on Plaintiffs' investigation of the facts, informal discovery, negotiations, zealous litigation, formal discovery, and resulting detailed knowledge of the factual and legal issues in this action.  The difficulties of litigation, the lengthy and uncertain process of establishing violations for each pay period, the Court's discretion to reduce PAGA penalties, and other potential risks were carefully considered by Plaintiffs and Plaintiffs' counsel in agreeing to the settlement.

It is within the discretion of this Court to approve the proposed settlement.  Accordingly, Plaintiffs respectfully request that the Court: (1) approve the proposed Settlement Agreement, (2) approve the requests for attorneys' fees and costs, administrative costs, and service awards to the Named Plaintiffs, and (3) dismiss the lawsuit with prejudice.

The litigation has been extensive and hard fought, over the course of six years, with SolarCity retaining four different sets of counsel during the different phases of the litigation.  The Parties engaged in four mediations, one with each set of new defense counsel.  The parties

engaged in substantial briefing on novel, complex procedural issues, which were shaped by the U.S. Supreme Court's groundbreaking ruling in *Lewis v. Epiq Systems* and its recent decision *Moriana v. Viking River Cruises*.  Plaintiffs' counsel have spent thousands of hours litigating the case, incurring nearly $200,000 in expenses.  The Parties reached the $1.5 million settlement while the Court was poised to issue its *Moriana* decision, which threatened to wipe out Plaintiffs' entire court case.  In light of the strengths and weaknesses of the case, this substantial recovery is a strong result for the State and its workers.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Allegations

During the liability period covered by the action (April 14, 2015 to September 1, 2022), SolarCity (including Tesla, which acquired SolarCity on August 1, 2016[1]) has provided solar panel design, installation, and maintenance services throughout California.  Plaintiffs Greg Carranza, Javier Frias, Ravi Whitworth, and Joshua Arguelles worked for SolarCity as hourly Residential Installers, installing solar panels at residential properties.

Plaintiffs bring this action under PAGA only on behalf of themselves and other employees who worked for SolarCity and/or Tesla in similar job roles installing, repairing, and/or maintaining solar power units in California from April 14, 2015 through September 1, 2022 ("Aggrieved Employees").  Plaintiffs allege that SolarCity has violated the California Labor Code protections applicable to Aggrieved Employees by (1) failing to provide proper meal and rest breaks; (2) failing to reimburse for reasonable work expenses such as mileage driven to work sites in their own vehicles, mobile phone use, and tools; (3) failing to incorporate nondiscretionary bonuses into the regular rate of pay when calculating overtime; (4) failing to compensate for all straight time and overtime worked – including time spent traveling between work sites ("drive time") during the workday, off-the-clock time spent undergoing online training, and off-the-clock time spent on pre- and post-shift activities; (5) failing to provide

---

[1] For ease of reference, lead Defendant SolarCity is used to describe both Defendants as applicable, unless otherwise indicated.

3

1    accurate wage statements; and (6) failing to pay all wages due upon separation of employment.

2    SolarCity zealously asserted merits defenses as to each of these claims. As to the first

3    claim, SolarCity contended that it has always had a compliant written policy to provide meal and

4    rest breaks and allow Aggrieved Employees to waive those breaks individually, through daily

5    timekeeping submissions by each employee. Furthermore, SolarCity has produced evidence that

6    the vast majority of Installers signed online forms stating that they voluntarily waived their meal

7    breaks and either took their full rest breaks or voluntarily chose not to take full meal and/or rest

8    breaks. SolarCity also asserts that it paid thousands of meal and rest period premiums when

9    employees reported that they were prevented from taking meal periods and/or it appeared that a

10    rest break was not provided to an employee.

11    Second, SolarCity emphasized that it has always maintained and disseminated

12    reimbursement policies, through which alleged Aggrieved Employees could be and were

13    reimbursed for any purchase of solar panel installation tools, mileage expenses incurred when

14    they drove their personal vehicles for work purposes, and personal cell phone use for work

15    purposes. Defendant also asserts it reimbursed thousands of Aggrieved Employees over two

16    million dollars for reasonable expenses when they had properly requested reimbursement.

17    Third, Defendant argued that it always properly included nondiscretionary bonuses when

18    calculating the employees' regular rate of pay, and that it provided them with explanations of

19    how nondiscretionary bonuses would be factored into the regular rate of pay.

20    Fourth, SolarCity argued that it has always maintained policies requiring Aggrieved

21    Employees to record all hours worked, and it provided them with numerous options to ensure

22    that they were paid for all hours worked, including the ability to retroactively enter their shift or

23    end times and to notify their manager, HR, or the payroll department about any needed

24    corrections to time records.

25    Fifth and sixth, SolarCity argued that the absence of underlying substantive violations

26    rendered the wage statement and late payment claims meritless.

27

28

## B.   Litigation and Arbitration

On March 29, 2016, Plaintiff Whitworth filed this action as a proposed class and representative PAGA action.  Humphrey Decl., ¶ 10.  On July 25, 2016, Plaintiffs Carranza and Frias filed a similar action as a class action in Santa Cruz Superior Court, No. 16CV011887.  *Id.* at ¶ 13.  On September 12, 2016, Plaintiffs Farrohki and Whitford joined as plaintiffs in Carranza and Frias's state court action.  *Id.* at ¶ 14.  Soon thereafter, Plaintiffs' counsel in the two cases joined forces, and the four state court Plaintiffs agreed to dismiss their state court action and join this action in a single case to be litigated by both sets of Plaintiffs' counsel together.  *Id.* Plaintiffs filed a consolidated First Amended Complaint on March 3, 2017, including all five plaintiffs.  *Id.* at ¶ 17.

The first contested issue in the action was litigation over the enforceability of SolarCity's arbitration agreements, which had class action waivers.  *Id.* at ¶ 12.  In 2016, SolarCity moved to compel Plaintiffs to individual arbitration, and the Court stayed the case pending the Ninth Circuit Court of Appeal's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016) regarding the enforceability of class action waivers in arbitration agreements.  Humphrey Decl., ¶ 12.  Thereafter, the Court denied SolarCity's motion to compel arbitration.  *Id.* at ¶ 15.  SolarCity appealed.  In 2017, SolarCity moved to stay the action in light of the United States Supreme Court grant of certiorari in *Morris*.  *Id.* at ¶ 18.  SolarCity also moved again to compel arbitration.  *Id.* at ¶ 19.  The Court denied SolarCity's second motion to compel arbitration and granted in part and denied in part its motion to stay, allowing the parties to continue discovery as to Plaintiffs' individual and representative PAGA claims.  *Id.*

In January 2018, the parties mediated the action with experienced mediator Michael Loeb of JAMS.  *Id.* at ¶ 38.  The parties were unable to reach a settlement.  Humphrey Decl., ¶ 38.

In July 2018, the Supreme Court issued its landmark decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), upholding the enforceability of class action waivers in arbitration agreements.  *Id.* at ¶ 21.  Plaintiffs agreed to withdraw their argument that SolarCity's arbitration agreements violated workers' rights to concerted activity to pursue improvements in their

working conditions (which *Epic* had foreclosed), dismissed their class claims, and narrowed the case to only allege PAGA representative action claims.  SolarCity then filed a third motion to compel arbitration, arguing that *Epic* supported forced arbitration of PAGA claims, implicitly overruling *Iskanian v. CLS Transportation Los Angeles, LLC*, 327 P.3d 129 (Cal. 2014).  *Id.* at ¶ 21.

In August 2018, the Court rejected SolarCity's argument that the PAGA claims must be arbitrated but agreed with SolarCity to stay the PAGA claims while Plaintiffs individually arbitrated their non-PAGA claims.  *Id.* at ¶ 22.

In December 2018, SolarCity replaced its in-house counsel and CFO and switched outside counsel from Littler Mendelson LLP to Shepard Mullin LLP.  *Id.* at ¶ 9.  In 2019, the parties mediated for the second time, this time with David Rotman, one of the most renowned mediators of complex employment actions in the country, but were again unable to reach a settlement.  Humphrey Decl., ¶ 39.

In November 2019, the parties resolved the individual cases for each of the five Plaintiffs in arbitration before JAMS.  *Id.* at ¶ 40.  At that point, SolarCity retained GBG, LLP for the arbitrations, while Shepard Mullin continued to represent SolarCity in the (then-stayed) litigation.  *Id.*  The parties engaged in the arbitrator selection process, exchanged voluminous written discovery, and conducted depositions.  *Id.* at ¶¶ 34-37.  Plaintiffs deposed SolarCity's Persons Most Knowledgeable and supervisors.  *Id.* at ¶ 36.  SolarCity deposed Plaintiff Carranza for three days and Plaintiff Whitworth for one day.  *Id.*  On November 9, 2020, as additional deposition dates and the five arbitration hearing dates approached (beginning January 2021 onward), the parties successfully mediated with the Honorable Jeff Winikow, resolving all non-PAGA claims in the five individual cases.  Humphrey Decl., ¶ 34, 40.  Plaintiffs were unable to resolve the PAGA claims, and the parties agreed that all discovery in the arbitrations could be used in the PAGA litigation.  *Id.* at ¶ 40.

Thereafter, the PAGA case resumed in this Court, and Plaintiffs filed the Fourth Amended Complaint to clarify the PAGA-only scope of the action.  *Id.* at ¶ 29.  On November 8,

2021, SolarCity retained its fourth set of lawyers in the litigation:  Morgan Lewis.  *Id.* at ¶ 30.

In May 2022, plaintiff's counsel in *Arguelles* contacted Plaintiffs to discuss coordinating efforts on behalf of all Plaintiffs and Aggrieved Employees.  *Id.* at ¶ 31.  Plaintiffs agreed, with Mr. Arguelles retaining Plaintiffs' counsel (Outten & Golden LLP and Christina Humphrey Law P.C.) to litigate his claims in *Arguelles* (and eventually, per the Fifth Amended Complaint filed here, ECF No. 186, in this action as well).  *Id.* at ¶ 32.

During summer 2022, the parties recommenced settlement discussions, this time with a fourth mediator, Michael Dickstein, a highly experienced wage and hour mediator including for PAGA claims.  Humphrey Decl., ¶ 41.  The parties held a mediation on June 6, 2022 and reached a settlement in principle on July 6, 2022.  *Id.*

### 1.    Related Cases

On May 16, 2022, SolarCity informed Plaintiffs of two other PAGA actions and one class action with similar allegations covering an overlapping group of employees:

1. *Lance Amato v. Tesla Energy Operations, Inc.*, Case No. 22CV394097 (Santa Clara Superior Court) (this PAGA action was filed in 2022 and has been stayed through settlement approval of this case).

2. *Anthony Lack v. Tesla Energy Operations, Inc and Tesla, Inc.*, Case No. 22CV394850 (Santa Clara Superior Court) (this PAGA action was subsequently individually resolved and dismissed).

3. *Paul Polson v. Tesla Energy Operations, Inc.*, Case No. 3:22-cv-02648 (N.D. Cal.) (this class action was filed in 2022 and has been stayed pending settlement approval in this case).

SolarCity has filed a Notice of Related Case in each of the cases and informed plaintiffs in each action of this settlement.  Declaration of Jahan C. Sagafi ("Sagafi Decl."), ¶ 49.

## III.   SUMMARY OF SETTLEMENT TERMS

For a more detailed breakdown of the Settlement Terms, refer to Humphrey Decl. at ¶¶ 42 a-g).  Defendant has agreed to pay a Total Settlement Amount of $1,500,000, covering: (1)

the PAGA Fund (75% of which is payable to the LWDA and 25% of which is payable to the Aggrieved Employees in Individual PAGA Payments); (2) Settlement Administrator's fees and costs expected to be $22,500; (3) Plaintiffs' counsel's requested attorneys' fees of up to 40% of the Total Settlement Amount ($600,000) and actual out-of-pocket costs ($180,000); and (4) Service Awards for the four named Plaintiffs ($10,000 each, for a total of $40,000).

The Aggrieved Employees covered by the Settlement are current and former nonexempt employees who worked for SolarCity as Installers, with job titles such as Photo Installer, Junior Installer, Crew Leader, PV Installer, and other similar job roles to install, repair, and/or maintain solar power units in customers' homes or worksites in California ("Covered Positions") during the PAGA Period of April 14, 2015 through September 1, 2022.  Each Aggrieved Employee, on behalf of themselves, the LWDA, and the State of California, will release Defendant and related entities from all PAGA claims that are alleged or that could have been reasonably alleged based on the facts asserted in the operative complaints or LWDA letters during the PAGA Period.  As is standard in PAGA settlements, Aggrieved Employees release such claims regardless of whether they cash PAGA payment checks, because there is no opt-out right in PAGA settlements.

In recognition of the value they have created, the time they have spent, and the risks they have undertaken, the four Plaintiffs request service awards of $10,000 each.  Plaintiffs' years of service made this settlement possible, creating significant value for the State and the Aggrieved Employees both in terms of the monetary value of the settlement and the deterrent value of a significant payment from Defendant.  This payment serves as a disincentive for employers throughout California to violate their workers' Labor Code rights.  In addition, Plaintiffs spent significant time discussing their claims with counsel, describing Defendant's employment practices and pay practices, guiding strategy regarding discovery and claims to pursue, engaging in long arduous depositions, and remaining in communication with counsel over six years of litigation.  Lastly, by publicly associating their names with these lawsuits, Plaintiffs have exposed themselves to the risk of retaliation by future potential employers, landlords, and

business partners.  They will forever be publicly linked with this workers' rights action, visible

through a simple internet search and potentially dismissed as "troublemakers" by would-be

employers or others – and they may never even know it has happened.  As set forth in the

declarations of Javier Frias and Greg Carranza, their affiliations with this lawsuit have made it

difficult to secure and retain employment as electricians.  Declaration of Javier Frias, ¶ 10;

Declaration of Greg Carranza, ¶ 10.  In addition, all four Plaintiffs are executing general releases

of all claims against Defendant.

Lastly, Plaintiffs seek Court approval of reimbursement of actually incurred litigation

costs of $180,000 and fees of 40% of the Total Settlement Amount (i.e., $600,000).  Over the

past six years, Plaintiffs have spent over 3,000 hours prosecuting these claims, with a total

lodestar of over $2,065,282.  This results in a lodestar multiplier of approximately 0.29x, far

below the typical fee multipliers in class action settlements.[2]

The parties have selected ILYM Group, Inc. ("ILYM") as the Settlement Administrator

to implement the settlement.  The Settlement Administrator's fees and costs will be deducted

from the Total Settlement Amount.

The Individual PAGA Payments will be allocated in direct proportion to the number of

pay periods each Aggrieved Employee worked for Defendant in a Covered Position.

## IV.     ARGUMENT

### A.     A PAGA Settlement Merits Approval Where It Satisfies the Statutory Requirements and Is Fair, Reasonable, and Adequate.

Courts typically approve PAGA settlements where "(1) the statutory requirements set

forth by PAGA have been satisfied, and (2) the settlement agreement is fair, reasonable,

and adequate in view of PAGA's public policy goals." *Patel v. Nike Retail Servs.*, No. 14-cv-

4781, 2019 U.S. Dist. LEXIS 77988, at *5 (N.D. Cal. May 8, 2019) (citing *Rincon v. W. Coast

Tomato Growers, LLC.*, No. 13-cv-2473, 2018 U.S. Dist. LEXIS 22886 (S.D. Cal. Feb. 12,

2018)).  "Because state law enforcement agencies are the real parties in interest, the court's task

---

[2] Even using the adjusted lodestar figure to account for recovery in past individual resolutions, the total lodestar multiplier would be 0.32x.  Declaration of Jahan C. Sagafi ("Sagafi Decl."), ¶ 46.

1    is to ensure that the state's interest in enforcing the law is upheld." *Rodriguez v. RCO*

2    *Reforesting, Inc.*, No. 16-cv-2523, 2019 U.S. Dist. LEXIS 12597, at \*10 (E.D. Cal. Jan. 24,

3    2019).

4          Although PAGA does not set forth the particular standard against which a PAGA

5    settlement should be evaluated, both a California appellate court and the LWDA have provided

6    guidance for PAGA settlement approval that mirrors the standard for evaluating class action

7    settlements.  The plain language of PAGA is consistent with "a standard requiring the trial court

8    to determine independently whether a PAGA settlement is fair and reasonable." *Moniz v.*

9    *Adecco USA, Inc.*, 72 Cal. App. 5th 56, 76 (Cal. App. 2021); *see also O'Connor v. Uber Techs.,*

10   *Inc.*, 201 F. Supp. 3d 1110, 1134-35 (N.D. Cal. 2016).  In *O'Connor*, the LWDA commented:

11          It is thus important that when a PAGA claim is settled, the relief provided for under
            the PAGA be genuine and meaningful, consistent with the underlying purpose of the
12          statute to benefit the public and, in the context of a class action, the court [must]
            evaluate whether the settlement meets the standards of being fundamentally fair,
13          reasonable, and adequate with reference to the public policies underlying the PAGA.

14   *Id.* at 1133 (quoting California Labor and Workforce Development Agency's Comments on

15   Proposed PAGA Settlement at 2-3 (internal quotation marks omitted)).

16          Relevant factors for a PAGA settlement include the "'strength of the plaintiffs' case; the

17   risk, expense, complexity and likely duration of further litigation. . .; the amount offered in

18   settlement; the extent of discovery completed and the stage in the proceedings; the experienced

19   and views of counsel; [and] the presence of a governmental participant[.]" *Id.* at 1120 (quoting

20   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The *Moniz* court held that "a

21   trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and

22   adequate in view of PAGA's purposes to remediate present labor law violations, deter future

23   ones, and to maximize enforcement of state labor laws." *Moniz*, 72 Cal. App. 5th at 77, 127

24   (noting that "many of the factors used to evaluate class action settlements bear on a settlement's

25   fairness" and reciting the factors above); *Basiliali v. Allegiant Air, LLC*, No. 18-cv-3888, 2019

26   U.S. Dist. LEXIS 228250, at \*8 (C.D. Cal. July 1, 2019) (quoting *Patel*, 2019 U.S. Dist. LEXIS

27   77988, at \*6).  A PAGA settlement should be approved when "a PAGA plaintiff has adequately

28

represented the state's interests, and hence the public interest."  *Moniz*, 72 Cal. App. 5th at 89.

**B.      The Proposed Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved.**

Because of the similarities between PAGA actions and class actions, California federal courts routinely apply the "fair, reasonable, and adequate" analysis found in class action settlement jurisprudence to PAGA settlements.  *See Haralson v. U.S. Aviation Servs., Corp.*, 383 F. Supp. 3d. 959, 966, 972 (N.D. Cal. 2019) (citing *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701, 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) (collecting cases)).  In determining whether a proposed Rule 23 settlement meets the fair, reasonable, and adequate standard, courts consider various factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (citations omitted). When determining whether to approve a class settlement,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Given the harmonious interpretation of Rule 23 and PAGA settlement requirements, this analysis applies with equal force to PAGA settlements such as this one.

**1.      Strength of the Plaintiffs' Case**

"The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery."  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009)).  To succeed on the merits at trial, Plaintiffs would have to prove that: (1) the contemporaneously entered meal and rest break attestations in the Aggrieved Employees' timekeeping records

11

confirming their ability or inability to take a meal and/or rest break, and the meal break waivers, were deficient, (2) Plaintiffs incurred costs for mileage for the work use of their personal vehicles, personal cell phone use for work purposes, and/or tools for work purposes, reported those expenses to SolarCity (or were prevented from doing so), and SolarCity failed to reasonably reimburse them, (3) SolarCity failed to properly include premiums in overtime pay calculations, (4) SolarCity was aware or should have been award that Aggrieved Employees were not being compensated for all hours worked and failed to compensate the Aggrieved Employees for all hours worked, (5) the resulting wage statements were deficient, and/or (6) Aggrieved Employees were owed wages upon termination of employment, which SolarCity willfully failed to pay.

Although Plaintiffs believe that their claims are meritorious, they recognize that continued litigation poses significant risks. <u>First</u>, and most powerfully, as the parties negotiated the settlement, the Supreme Court was considering in *Viking River* whether and how much to limit plaintiffs' ability to pursue PAGA claims in court on a representative basis, or whether PAGA claims could be compelled to individual arbitration. After the settlement was reached, the Supreme Court held in *Viking River* that the Federal Arbitration Act requires individual arbitration of PAGA claims, after which, defendants may argue that the remaining representative PAGA claims should be dismissed. There is a risk of that outcome here. Furthermore, uncertainty in this area remains, with the California Supreme Court soon to resolve questions left open by *Viking River*,[3] followed by likely further opportunities for the U.S. Supreme Court to change the legal landscape again. The unsettled state of the law posed an existential threat to the litigation, creating a very real possibility that no absent Aggrieved Employees could recovery any penalties without stepping forward individually, and that, as a practical matter, the State would recover nothing. If the claims were compelled to individual arbitration, the vast majority

---

[3] Pending before the California Supreme Court is *Adolph v. Uber Technologies, Inc.*, Case No. S274671, which will address whether an aggrieved employee who has been compelled to arbitrate claims under PAGA that are premised on Labor Code violations actually sustained by the aggrieved employee maintains standing to pursue PAGA claims arising out of events involving other employees in court or in any other forum.

of Aggrieved Employees would, as a practical matter, have no ability to recover at all, because they would not know of their legal rights and/or it would be prohibitively expensive and time-consuming for them to litigate their claims individually.

Second, SolarCity has argued that these representative claims cannot be tried in a single proceeding in an efficient manner on behalf of all Aggrieved Employees given the number of employees and claims at issue.  This is another area of legal uncertainty and risk, that will be addressed by the California Supreme Court next year.  *See Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685 (Cal. Ct. App. Mar. 23, 2022), rev. granted, 511 P.3d 191 (June 22, 2022).

Third, as to liability, SolarCity would be expected to vigorously assert merits defenses to each claim, as explained in Section II.A above.

Fourth, should Plaintiffs prevail on the merits, the Court might exercise its discretion to depart downward from the civil penalties set forth in PAGA.  *See* Cal. Lab. Code section 2699(e)(2); *see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (the court found that a "significant" reduction in the amount of civil penalties awarded in settlement was "appropriate" in part because the employer did not "deliberately evad[e] a clear obligation to provide legally required pay and benefits to employees").  This is not theoretical.  In practice, some courts have reduced PAGA penalties by substantial percentages.  *See, e.g., Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 514, 529 (2014) (PAGA penalties reduced by 90%, to $5 per pay period, after trial where violations had been proved); *Parr v. Golden State Overnight Delivery Serv., Inc.*, 2014 Cal. Super. LEXIS 1551 (Alameda Super. Ct. Jul. 10, 2014) (PAGA penalties reduced by 95%); *Fleming v. Covidien, Inc.*, No. EC CV 10-1487, 2011 U.S. Dist. LEXIS 154590, at *8-9 (C.D. Cal. Aug. 12, 2011) (reducing penalty award by 82% where defendant was "not aware" that its actions violated the law).

Fifth, even were Plaintiffs to prevail at trial on behalf of all Aggrieved Employees and secure a judgment of substantial PAGA penalties, Defendant would surely appeal, introducing delay and the possibility of no recovery at all for Plaintiffs and the Aggrieved Employees. Humphrey Decl., ¶ 43-46 (setting forth the potential value of each of the claims and assessing

13

strengths and weaknesses).

Here, the Settlement provides the State of California and the Aggrieved Employees with a meaningful recovery of penalties, whereas when *Viking River* was pending, there was a risk of $0 in recovery.  "[I]n light of the challenges Plaintiffs would face moving forward, the proposed settlement represents a fair and adequate resolution of Plaintiffs' claims." *Ford v. CEC Entm't Inc.*, No. 14-cv-677, 2015 U.S. Dist. LEXIS 191966, at *9-10 (S.D. Cal. Dec. 14, 2015); *see also G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 U.S. Dist. LEXIS 159597, at *24 (N.D. Cal. Nov. 25, 2015) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.") (citation omitted).

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

In evaluating this factor, courts consider "the probable costs, in both time and money, of continued litigation." *Barbosa*, 297 F.R.D. at 446 (citation omitted).  In general, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).  When a party continues to deny liability, there is an inherent risk in continuing litigation.  *See Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 U.S. Dist. LEXIS 44852, at *13 (N.D. Cal. April 21, 2011); *cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-2576, 2013 U.S. Dist. LEXIS 60114, at *14 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive for both sides.").  There is a risk when an "adverse judgment . . . could result in either a diminished recovery or no recovery at all." *Patel*, 2019 U.S. Dist. LEXIS 77988, at *8.  In short, "legal uncertainty favors approval of a settlement." *Id.* at *7 (citing *Browning v. Yahoo! Inc.*, No. C04-01463, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007)).

In this case, the additional costs, delay, and risk inherent in moving forward to trial and likely appeal strongly weigh in favor of settlement Humphrey Decl., ¶ 43-46.

### 3.    Amount Offered in Settlement

"[S]ettlement is about compromise, a yielding of the highest hopes in exchange for

certainty and resolution." *Barbosa*, 297 F.R.D. at 447 (citation omitted).  Here, the Total

Settlement Amount of $1,500,000 represents a reasonable compromise of Plaintiffs' claims

given all the risk factors.  Although Plaintiffs believe that their claims are meritorious and that

they could recover substantially more in successful litigation, Plaintiffs also recognize that the

risks outlined above strongly support the settlement.   In estimating SolarCity's potential

exposure, Plaintiffs also considered the risk that the Court would refuse to "stack" PAGA

penalties, thus significantly limiting the recoverable PAGA penalties.

Plaintiffs' exposure analysis is premised on SolarCity's data listing approximately 6,210

Aggrieved Employees and a total of 451,897 pay periods.  Below is a summary of the analysis:

| Claim | Estimated Maximum Penalties |
|---|---|
| Failure to Pay Minimum Wage | $1,148,400 |
| Failure to Provide Meal Breaks | $451,900 or $20,795,000 |
| Failure to Provide Rest Breaks | $451,900 or $20,795,000 |
| Failure to Reimbursement Work Expenses | $5,309,800 |
| Failure to Provide Accurate Itemized Wage Statements | $0 or $41,590,000 |
| Failure to Timely Pay Wages Upon Termination | $824,000 |
| **Total Potential Penalties** | **$7,714,000 or $89,313,800** |

Humphrey Decl. ¶¶ 43-46.

There are two alternate meal break and wage statement calculations, each of which relies

on one of two assumptions: (1) all meal period attestations are invalid, such that SolarCity would

owe a premium for each pay period in which there is a meal break that was not taken and a

premium was not paid, or (2) all meal period attestations are sufficient to avoid liability,

reducing meal break and wage statement penalties.  Humphrey Decl. ¶ 43.  The rest break

calculation applies the same assumptions.  *Id.* ¶ 43.  The reimbursement figure represents

Aggrieved Employees' mileage penalties less 23% of Aggrieved Employees who, at some point

during their employment, submitted a mileage reimbursement request, and less an additional

30% of Aggrieved Employees because some Aggrieved Employees were passengers and

therefore incurred no mileage costs, since the mileage reimbursement claims rest on the theory

that Aggrieved Employees drove personal vehicles from site to site during the day, transporting

coworkers with them.  *Id.* ¶ 43.  All calculations use initial violation rates.  *See Bernstein v.*

*Virgin Am., Inc*., 3 F.4th 1127, 1144 (9th Cir. 2021) (holding that the airline "was not notified by the labor commissioner or any court that it was subject to the California Labor Code until the district court partially granted plaintiffs' motion for summary judgment[,]" and therefore heightened penalties did not apply for Labor Code violations that occurred before such notification); *Gunther v. Alaska Airlines, Inc.* 72 Cal App. 5th 334, 355-56 (2021).

The $1,500,000 recovery equals 19.5% of the maximum exposure of $7,714,000 and 1.6% of the higher $89,313,800 figure.  Given the serious obstacles to Plaintiffs prevailing at trial on all of their PAGA claims, winning all possible penalties, and successfully defending the victory on appeal, this is a strong result.  The 2.0 to 14.1% result compares favorably with those in other settlements approved in this district.  *See, e.g.*, *McLeod v. Bank of Am., N.A.*, No. 18-cv-3294, 2018 U.S. Dist. LEXIS 195314, at *5, 10, 14 (N.D. Cal. Nov. 14, 2018) (approving PAGA penalties approximately 1% of maximum penalties); *Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352, 2016 U.S. Dist. LEXIS 133832, at *20-21 (N.D. Cal. Sept. 28, 2016) (approving PAGA penalties less than 1% of maximum penalties); *Hartley v. On My Own, Inc.*, 2020 U.S. Dist. LEXIS 154315, at *10-11 (E.D. Cal. Aug. 25, 2020) (approving settlement with PAGA penalty of 3.5% of maximum potential penalties, resulting in average payment per employee of $61); *Haralson*, 383 F. Supp. 3d 959, 972-74 (N.D. Cal. June 7, 2019) (citing cases reflecting approval of settlements with PAGA penalties at 0.2% to 1.1% of the total potential value); *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-4708-LHK, 2017 U.S. Dist. LEXIS 137272, at *14-15 (N.D. Cal. Aug. 25 2017) (approving PAGA penalties of less than 4.5% of maximum penalties); *cf. Harvey v. Morgan Stanley Smith Barney LLC*, No. 18-cv-2835, 2019 U.S. Dist. LEXIS 159258, at *8-11 (N.D. Cal. Sep. 5, 2019) (approving class/PAGA settlement valued at 2% to 6.6% of total exposure, depending on different analyses of the value of the claims, over a class member's objection that the settlement amount was too low).  The state court outcome in *Carrington*, 30 Cal. App. 5th 504, also supports the fairness of the settlement given the many risk factors presented here.  In *Carrington*, the plaintiff sought nearly $70 million in PAGA penalties.  After prevailing on liability, the plaintiff was unsuccessful in convincing the trial

court to award multiple penalties stemming from the same underlying violation, and the court significantly reduced penalties, awarding 0.2% of the total requested penalties; the court of appeal affirmed. *Id.* at 529.

Below are data regarding another class action settlement in which PAGA claims were resolved:

| Case Name | *Hartley v. On My Own, Inc.*, No. 17-cv-353, 2020 U.S. Dist. LEXIS 154315 (E.D. Cal. Aug. 25, 2020) |
|---|---|
| Released Claims | PAGA penalties for unpaid overtime and travel time, meal and rest break violations, unreimbursed business expenses, and failure to provide accurate wage statements |
| Total Settlement Fund | $575,000 |
| Class and Collective Members | 1,467 |
| Average Recovery | $61.18 |
| Attorneys' Fees and Costs | Fees: $156,714<br>Costs: $6,802.87 |

While a larger settlement amount was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations and internal quotation marks omitted). The risk of a much smaller award of penalties, or no award at all, was distinctly present in this case, particularly given the uncertainty posed by *Viking River*. Here, the Settlement substantially benefits the State and its workers by providing meaningful relief and disincentivizing Labor Code violations. This factor, therefore, weighs in favor of approval.

Also, the Parties' settlement is limited in scope to a release of PAGA civil penalty claims only, for penalties that under the law are largely paid to the State, not individual employees. Significantly, the settlement agreement does not release any individual claims for wages, premium pay, expenses or statutory penalties that any employee covered by the settlement may have.

### 4. The Extent of Discovery Completed and the Stage of the Proceedings

"The extent of discovery may be indicative of the parties' knowledge of the case and is therefore relevant to determining the overall fairness of a settlement." *Nat'l Rural Telecomms*

*Coop.*, 221 F.R.D. at 527 (citation omitted); *see also Patel*, 2019 U.S. Dist. LEXIS 77988, at *11-12 ("Because the parties have engaged in extensive discovery and worked on this case for several years, this factor weighs in favor of finding the settlement fair, reasonable, and adequate.").

During the seven years from prefiling investigation to the present, Plaintiffs have gathered significant evidence, interviewing witnesses, collecting documents, drafting over 25 witness declarations, and researching claims. In litigation, Plaintiffs zealously litigated various issues including discovery issues, enforceability of individual arbitration agreements in both this action and the related arbitrations. In the five individual arbitrations, Plaintiffs intensively litigated Plaintiffs' claims with respect to both liability and damages, with the arbitration hearings fast approaching. Plaintiffs engaged an expert statistician and a forensic cell phone expert. Both parties took depositions to probe the liability and remedies issues. Throughout it all, Plaintiffs carefully prepared for and participated in four sets of settlement discussions with four mediators in discussion with four sets of SolarCity's counsel. As part of those discussions, the parties exchanged voluminous data, extensive documentary evidence, and detailed mediation briefs and damages analyses. Humphrey Decl., ¶¶ 33-37. Where, as here "[C]lass [C]ounsel possess[es] a sufficient understanding of the issues involved and the strengths and weaknesses of the case," this factor favors settlement. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Lewis v. Starbucks Corp.*, No. 07-cv-490, 2008 U.S. Dist. LEXIS, at *17 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

### 5.    Experience and View of Counsel

"The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's

expected outcome in litigation.").  Plaintiffs' counsel have a proven track record of successfully litigating hundreds of PAGA actions and other representative actions.  *See Walsh v. CorePower Yoga, LLC*, No. 16-cv-05610, 2017 U.S. Dist. LEXIS 20974, at *24-25 (N.D. Cal. Feb. 14, 2017) ("[Outten & Golden LLP] have a proven track record in the prosecution of class actions as they have successfully litigated and tried many major class action cases."); *Perez v. Allstate Ins. Co.*, No. 11-cv-1812, 2014 U.S. Dist. LEXIS 130214, at *69 (E.D.N.Y. Sept. 16, 2014) ("the Court concludes that O&G has the requisite experience in handling class actions and the particular claims asserted in the instant action, are well versed in the applicable law, and have the resources necessary to represent the . . . Class fairly and adequately.").  Plaintiffs' counsel endorses the Settlement as fair, adequate, and reasonable, and believe that it provides an excellent outcome for the State and Aggrieved Employees, particularly in light of the significant risks, costs, and delays of further litigation.  Humphrey Decl., ¶¶ 3-8, 44.  This factor, therefore, weighs in favor of approval.

### 6.    Presence of a Governmental Participation

Plaintiffs act as proxies of the State of California, with the implicit blessing of the LWDA, having properly submitted their PAGA Notice at the outset of the case and contemporaneously with the filing of this motion at the action's conclusion.  The LWDA has never asserted any objection, criticism, or concern to the deputization of Plaintiffs as PAGA representatives, and while its silence is not consent, the absence of objection provides some assurance that the LWDA has not found any deficiencies in the Settlement.

## C. The Proposed Service Awards Are Fair and Reasonable.

Service awards compensate named plaintiffs for the time they put into a case and recognize the risks and burdens they bear by stepping forward and pursuing claims on behalf of other aggrieved employees and the State. *See, e.g.*, *Abelar v. Am. Residential Servs., LLC*, No. 19-cv-726, 2019 U.S. Dist. LEXIS 198772, at *16 (C.D. Cal. Nov. 14, 2019) (approving service award for named plaintiffs in PAGA action as "reasonable compensation for the time and acceptance of adverse employment risk by Plaintiff"). They also properly recognize the value created by the PAGA representatives; without a plaintiff, there would truly be no litigation and no settlement. Service awards are appropriate in a representative action because they provide an incentive to bring important cases that have a broad beneficial impact on others, not just the plaintiff herself. *See Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (affirming service awards to the named plaintiffs "compensating them for their efforts in bringing the action").

Plaintiffs each request approval of a $10,000 service payment (for a total of $40,000) as compensation for the efforts they made on behalf of the State and Aggrieved Employees.

> [C]riteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit . . . enjoyed by the class representative as a result of the litigation.

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1394-95 (2010) (citations and internal quotation marks omitted).

Each of these factors weighs strongly in favor of the requested service awards. <u>First</u>, Plaintiffs undertook significant risk – both financially and reputationally – by associating their names with large-scale legal action against their employer. <u>Second</u>, Plaintiffs spent significant time assisting counsel with discovery, and the work they performed with respect to their individual arbitrations greatly helped advance the PAGA litigation by illustrating liability issues and the commonality of employees' experiences. Specifically, Plaintiffs provided factual

information to counsel and maintained communication with them throughout the case; reviewed the complaints before they were filed; responded to discovery requests, including searching for any potentially relevant documents or records in their possession; communicated with counsel before, during, and after the mediations and arbitration proceedings; assisted in counsel's preparation for mediation and the arbitrations; remained on-call and available to discuss the litigation and settlement negotiations throughout the past seven years.  *See* Declarations of Ravi Whitworth, Greg Carranza, Javier Frias, and Joshua Arguelles.

### D.   The Requested Fees and Costs Are Fair and Reasonable.

Here, the attorneys' fees requested are far less than Plaintiffs' counsel's lodestar, which further demonstrates that the fees requested are reasonable.  Plaintiffs' counsel's lodestar is $2,065,282.  Sagafi Decl. ¶¶ 40-45; Humphrey Decl., ¶¶ 48-52.  Thus, the requested fee equals a 0.29x multiplier.  *See Alvarez v. Farmers Ins. Exch.*, No. 14-cv-574, 2017 U.S. Dist. LEXIS 119128, at *14 (N.D. Cal. Jan. 17, 2017) (fee award that was 53% of lodestar was "objectively reasonable under the lodestar method of calculation"); *Basiliali*, 2019 U.S. Dist. LEXIS 228250, at *11 (finding 33.3% of the common fund in PAGA settlement reasonable where lodestar significantly exceeded requested fee); *Abelar*, 2019 U.S. Dist. LEXIS 198772, at *14-15 (same); *Taylor v. Shippers Transp. Express, Inc.*, No. 13-cv-2092, 2015 U.S. Dist. LEXIS 191461, at *51-54 (C.D. Cal. May 14, 2015) (finding 33 1/3% fee reasonable where lodestar multiplier was 0.74x); *Dudum v. Carter's Retail, Inc.*, No. 14-cv-988, 2016 U.S. Dist, LEXIS 166881, at *23-27 (N.D. Cal. Dec. 2, 2016) (approving 31.84% fee, where lodestar multiplier was 0.87x); *Starks v. Vortex Industries*, 53 Cal. App. 5th 1113, 1120 (2020) (approving $630,000 attorney fee award in PAGA Action where gross settlement was $675,000).

Plaintiffs' counsel in this case have spent seven years, thousands of hours, and $180,821 in out-of-pocket costs to overcome obstacles to recovery and press every opportunity to achieve a result for the State and the Aggrieved Employees.  Sagafi Decl. ¶ 47; Humphrey Decl. ¶ 52. Because the Settlement Agreements limits Plaintiffs' costs, Plaintiffs' counsel requests $180,000

21

1    and will not be reimbursed for the total amount of actual out-of-pocket costs.  See Settlement

2    Agreement, ¶ IV.4.

3         There were moments when it might have been tempting for counsel to give up and focus

4    on other more profitable matters.  In the end, this modest partial recovery of fees is warranted to

5    ensure that capable lawyers remain willing to protect workers' rights to be free from Labor Code

6    violations in future situations.

7         **E.    Approval of the Settlement Administrator's Costs Is Appropriate.**

8         Plaintiffs are confident that ILYM will successfully administer the settlement, and it

9    satisfies the requirements in the District Guidance.  *See* Declaration of Sean Hartranft ("Hartranft

10   Decl.").

11        Plaintiffs engaged four different settlement administrators in a competitive bidding

12   process and chose ILYM, whose fee will not exceed $22,500.  Sagafi Decl., ¶ 34.  ILYM has

13   administered numerous settlements for Plaintiffs' counsel in the past two years.[4]  *Id.* at ¶ 35.

14   ILYM maintains a Security Summary and Protocol to securely handle individuals' data and

15   maintains insurance in case of errors.  *See* Hartranft Decl. ¶ 2.  Based on ILYM's quality and the

16   low cost of their bid, Plaintiffs selected them to administer this settlement.

17        Based on the foregoing, Plaintiffs respectfully request that the Court approve payment of

18   the Claims Administrator's Costs from the Settlement Fund.

19                          **<u>CONCLUSION</u>**

20        For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) approve the

21   Settlement Agreement; (2) approve the requests for attorneys' fees and costs and the Service

22   Awards; and (3) dismiss the PAGA claims with prejudice.

23

24

---

25        [4] *See Megan Juric v. Dicks Sporting Goods*, No. 20-cv-651 (W.D. Penn.); *Lombari v.
     ShopKeep Inc.*, No. 521461/2021 (N.Y. Sup Ct., Kings County); *Brown v. Sisense Inc.*, No.
26   531125/2022; (N.Y. Sup. Ct., Kings County); *Chew v. Syracuse University*, No. 525007/2021
     (N.Y. Sup. Ct., Kings County); *Stang v. Paycor, Inc.*, No. 20-cv-00882 (S.D. Ohio); *Hill v.
27   Marathon*, No. CIVMSC20-00518 (Cal. Sup. Ct., Contra Costa County); and *Castillo v. Bank of
     America*, No. 17-cv-580.

28

Dated:  January 13, 2023

Respectfully submitted,

By: /s/ Jahan C. Sagafi
Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Christina A. Humphrey (Cal. Bar No. 226326)
christina@chumphreylaw.com
**CHRISTINA HUMPHREY LAW, PC**
1117 State Street
Santa Barbara, CA 93101
Telephone: (805) 618-2924
Facsimile: (805) 618-2939

Aaron C. Gundzik (SBN 132137)
aaron.gundzik@gghllp.com
Rebecca G. Gundzik (SBN 138446)
rebecca.gundzik@gghllp.com
**GUNDZIK GUNDZIK HEEGER LLP**
14011 Ventura Blvd., Suite 206E
Sherman Oaks, CA 91423
Telephone: (818) 290-7461
Facsimile: (818) 918-2316

*Attorneys for Plaintiffs and Aggrieved Employees*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF PRIVATE ATTORNEYS GENERAL ACT
(PAGA) SETTLEMENT
CASE NO. 16-CV-01540-JSC