United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAVI WHITWORTH, et al.,
Plaintiffs,
v.
SOLARCITY CORP., et al.,
Defendants.

Case No. 16-cv-01540-JSC

**ORDER RE: PRIVATE ATTORNEYS GENERAL ACT SETTLEMENT**

Re: Dkt. No. 190

Plaintiffs Ravi Whitworth, Javier Frias, Greg Carranza, and Joshua Arguelles request approval of a Private Attorneys General Act ("PAGA") settlement under California Labor Code section 2698, et seq., with Defendants SolarCity Corp. and Tesla Energy Operations, Inc. (Dkt. No. 190.[1]) Having reviewed Plaintiffs' unopposed motion, the relevant legal authority, and Plaintiffs' supplemental submissions, the Court GRANTS the motion for approval of the PAGA Settlement, and GRANTS IN PART and DENIES IN PART the request for attorneys' fees, costs, and service awards.

## BACKGROUND

The Court incorporates by reference the factual and procedural background in Plaintiffs' unopposed motion for approval. (Dkt. No. 190 at 11-13.)

## THE SETTLEMENT AGREEMENT

### A. PAGA Settlement Employees

The Settlement Agreement defines the PAGA Settlement Employees as "all current and former non-exempt employees who worked for Defendants with job titles such as Photo Installer,

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

Junior Installer, Crew Lead, PV Installer and other similar job roles to install, repair, and/or maintain solar power units located in customers' homes or worksites in California during the PAGA Period (April 14, 2015, through September 1, 2022)." (Dkt. No. 190-1 at 60 (Settlement Agreement § I.17.) There are 4,622 such employees. (Dkt. No. 190-1, Humphrey Decl. at ¶ 42.A.)

**B. The Payment Terms**

Defendants have agreed to pay a gross settlement amount of $1,500,000 which includes:

1. the PAGA Fund (75% of which is payable to the California Labor and Workforce Development Agency (the "LWDA") and 25% of which is payable to the Aggrieved Employees in individual PAGA payments;
2. the settlement administrator's fees and costs;
3. attorney fees and costs; and
4. individual service awards for the named plaintiffs.

(Settlement Agreement at § I.8.) The gross settlement amount is non-reversionary. (*Id*.)

The PAGA Settlement Employees shares shall be calculated and apportioned on a pro rata basis based on the number of eligible pay periods they worked during the eligible period. (Settlement Agreement at § V.2.) Twenty-five percent of the PAGA Payment will be divided by the aggregate total number of eligible pay periods, resulting in a "Pay Period Value." (*Id.*) Then, "[e]ach PAGA Settlement Employee's Individual PAGA Payment will be calculated by multiplying each PAGA Settlement Employee's total number of Eligible Pay Periods by the Pay Period Value based on the number of Eligible Pay Periods PAGA Settlement." (*Id*.)

**C. Attorneys' Fees and Costs, and Individual Service Awards**

Defendants agree not to oppose Plaintiffs' counsel's request for attorneys' fees not to exceed 40% or $600,000 of the Gross Settlement Amount, or to oppose a request for costs not to exceed $180,000. (Settlement Agreement at § IV.4.a.) If the Court awards a lower amount in attorneys' fees and/or costs than requested, the difference will be added to the PAGA payment. (*Id*.)

Subject to Court approval, the Settlement Agreement also provides for individual service

awards of up to $10,000 for each named plaintiff. (Settlement Agreement at § IV.4.c.) If the Court awards less than this amount, the difference will be added to the PAGA payment. (*Id.*)

**D. Settlement Administration**

The Parties have chosen ILYM Group, Inc., as the settlement administrator following a competitive bidding process. (Settlement Agreement at § I.21; Dkt. No. 190-2 at ¶ 33.) The settlement administration costs are currently estimated to be less than $22,500, although the settlement agreement provides for up to $25,000 in settlement administration costs. (Dkt. No. 190-2 at ¶ 36; Dkt. No. 190-1, Settlement Agreement at § IV.4.b.) The settlement administrator's tasks include updating the PAGA Settlement Employees addresses, determining the individual PAGA payment amount for each PAGA Settlement Employee, distributing the payments to the PAGA Settlement Employees and the LWDA, performing tax related accounting and administrative services, and distributing funds from undeliverable or uncashed settlement checks to the cy pres. (*Id.* at § V.1.)

**E. Scope of Release**

The PAGA released claims include: any "PAGA [claims] that are alleged or that could have been reasonably alleged based on the facts asserted in the operative complaints in the Actions or LWDA Letters, including claims based on alleged violations and recoverable penalties under Labor Code sections 201-205, 210, 216, 221, 223, 225.5, 226, 226.2, 226.3, 226.7, 256, 510, 511, 512, 516, 551, 552, 553, 558, 1174, 1174.5, 1182.12, 1194-1197.1, 1198, and 2802." (Settlement Agreement at § I.14.) Plaintiffs release these claims on behalf of "the LWDA, the State of California, and any other individual or entity acting on behalf of or purporting to act on behalf of the LWDA and/or the State shall be barred from asserting any of the PAGA Released Claims in any future litigation, arbitration, or other legal forum." (Settlement Agreement § IV.5.a.) Plaintiffs also release these claims on behalf of the PAGA Settlement Employees and their heirs, successors, assigns, attorneys and agents. (*Id.* at § IV.5.b.)

The Plaintiffs themselves personally release:

> all known and unknown claims, including any wage and hour claims, claims under California Business & Professions Code section 17200, claims under the Labor Code, and all claims for indemnity or

> reimbursement of business expenses, overtime compensation, minimum wages, timely payment of wages, wage statement claims, meal and rest period claims, penalties, liquidated damages, and interest, and all other claims under state, federal, and local laws, as well as the common law, including laws related to maintaining payroll records, payment of sick leave, fraud, trespass, conversion, discrimination, harassment, or retaliation. Plaintiffs further agree that they expressly waive and relinquish to the fullest extent permitted by law, the rights and benefits of California Civil Code section 1542.

(*Id*. at § IV.5.c.)

**DISCUSSION**

A PAGA representative action is not a class action, but "is instead a type of qui tam action." *Moniz v. Adecco USA, Inc*., 72 Cal. App. 5th 56, 76 (2021) (cleaned up). A plaintiff who brings a PAGA claim "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). "Such a plaintiff also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general, and 75% of the penalties go to the LWDA 'for enforcement of labor laws ... and for education of employers and employees about their rights and responsibilities under this code.'" *O'Connor v. Uber Tech., Inc*., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (quoting Cal. Lab. Code § 2699(i))). "This duty imposed upon the PAGA representative is especially significant given that PAGA does not require class action procedures, such as notice and opt-out rights." *Id*.

When PAGA claims are settled, the court must "review and approve" the settlement. Cal. Lab. Code § 2699(l). Under PAGA, courts may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). However, "neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer" as to what the appropriate standard is for approval of a PAGA settlement. *Flores v. Starwood Hotels & Resorts Worldwide, Inc*., 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). Generally, courts apply a Rule 23-like standard, asking whether the settlement of the PAGA claims is "fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes." *Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (collecting

cases). As such, several courts have evaluated proposed PAGA settlements under the fairness factors set forth in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), which courts use to determine the fairness of a settlement under Rule 23(e). *See Boddie v. Signature Flight Support Corp*., No. 19-CV-03044-DMR, 2021 WL 2651369, at *5 (N.D. Cal. June 28, 2021) (collecting cases).

## I. Adequacy of the Settlement Agreement

### A. Statutory Notice Requirement

First, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Plaintiffs did so here. (Dkt. No. 190-1, Humphrey's Decl. at ¶¶ 11-13.) Second, a party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the LWDA to allow the LWDA to comment on the settlement if the LWDA so desires. *See* Cal. Labor Code § 2699(l)(2). Plaintiffs served the LWDA with a copy of the settlement agreement and the motion for approval on January 14, 2023. (Dkt. No. 202-2.)

### B. The Fairness Factors

The Court evaluates the settlement under the relevant *Hanlon* factors: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the amount offered in settlement; 4) the extent of discovery completed and the stage of the proceedings; 5) the experience and views of counsel; and 6) the presence of government participation. *Hanlon*, 150 F.3d at 1026. The court will also evaluate the proposed settlement in light of PAGA's policy goals of "benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *See O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016) (noting that "the LWDA rightly has stressed that ... the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public").

#### 1. Strength of Plaintiffs' Case

"The initial fairness factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery." *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 445 (E.D.

Cal. 2013) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009)). Plaintiffs contend that to succeed on the merits of their claims here, they would have to prove:

> (1) the contemporaneously entered meal and rest break attestations in the Aggrieved Employees' timekeeping records confirming their ability or inability to take a meal and/or rest break, and the meal break waivers, were deficient, (2) Plaintiffs incurred costs for mileage for the work use of their personal vehicles, personal cell phone use for work purposes, and/or tools for work purposes, reported those expenses to SolarCity (or were prevented from doing so), and SolarCity failed to reasonably reimburse them, (3) SolarCity failed to properly include premiums in overtime pay calculations, (4) SolarCity was aware or should have been award that Aggrieved Employees were not being compensated for all hours worked and failed to compensate the Aggrieved Employees for all hours worked, (5) the resulting wage statements were deficient, and/or (6) Aggrieved Employees were owed wages upon termination of employment, which SolarCity willfully failed to pay.

(Dkt. No. 190 at 17-18.) While Plaintiffs believe they would prevail on their claims, they maintain there are several significant risks of continued litigation. (Dkt. No. 190 at 18-20.) First, the Supreme Court's *Viking River* decision regarding arbitration of PAGA claims might require dismissal of the remaining representative PAGA claims. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). Second, Defendants have argued that representative claims cannot be tried in a single proceeding in an efficient manner on behalf of all Aggrieved Employees given the number of employees and claims at issue. This issue is currently pending before the California Supreme Court. *See Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685 (Cal. Ct. App. Mar. 23, 2022), rev. granted, 511 P.3d 191 (June 22, 2022). Third, Defendants dispute the merits of all of Plaintiffs' claims here. Fourth, even if Plaintiffs prevailed on the merits, the court could reduce the civil penalties. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016). Finally, Defendants would likely appeal any judgment entered in Plaintiffs' favor. The "legal uncertainties at the time of settlement" favor approval of the settlement here. *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007).

**2. Risk, Expense, Complexity, and Likely Duration of Further Litigation**

"The risk, expense, complexity, and likely duration of further litigation are factors that consider the probable costs, in both time and money, of continued litigation." *Barbosa v. Cargill*

*Meat Sols. Corp*., 297 F.R.D. 431, 446 (E.D. Cal. 2013) (cleaned up). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Without a settlement, Plaintiffs faced additional costs, delay, and the risks of trial and a possible appeal. As settlement provides a timely, certain recovery to the state and to the aggrieved employees in this case, this factor favors approval.

**3. Amount Offered in Settlement**

When considering whether the amount offered in settlement is fair and adequate, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Plaintiffs insist the $1,500,000 settlement is reasonable because is equals 18.3 percent of the lowest maximum exposure of $8,186,000 and 1.6 percent of the higher $90,462,200 maximum exposure figure. (Dkt. No. 190 at 22; Dkt. No. 193-1 at ¶ 5.) Plaintiffs contend that a 2 percent to 14.1 percent potential recovery compares favorably with those in other settlements approved in this district. (Dkt. No. 190 at 22 (collecting cases).)

Under the settlement, Aggrieved Employees will receive 25 percent of the $1.5 million settlement fund after deductions for the settlement administrator's fees and costs, attorney fees and costs; and the individual service awards for the named plaintiffs (provided these are approved by the Court). Assuming the Court approved all of these amounts, this would leave $655,000 in PAGA penalties. Of this, 25 percent would be allocated to the 4,622 Aggrieved Employees, who would each receive on average an estimated $35.00. While this amount is lower than the amounts approved by the courts in the cases cited by Plaintiffs, given that any recovery here is a penalty, and the Aggrieved Employees have not released their individual claims, the Court finds the amount reasonable. *See, e.g., Hartley v. On My Own, Inc*., 2020 WL 5017608, at *4 (E.D. Cal. Aug. 25, 2020) (approving settlement where average payment per employee was $61.18 per aggrieved employee reasonable); *Basiliali v. Allegiant Air, LLC*, No. 18-CV-03888 RGK MRW,

2019 WL 8107885, at *4 (C.D. Cal. July 1, 2019) (approving settlement where average payment per employee was $387).

Further, having reviewed Plaintiffs' supplemental brief (Dkt. No. 193), the Court is satisfied with Plaintiffs' proposed allocation of the penalties based on a pro rata work-week calculation. (Dkt. No. 193.)

Accordingly, this factor weighs in favor of approval.

**4. Extent of Discovery Completed and Stage of the Proceedings**

This factor likewise favors approval. During the seven years this action has been pending, Plaintiffs have engaged in extensive investigation and discovery. (Dkt. No. 190-1, Humphrey Decl. at ¶¶ 33-37.) Plaintiffs gathered over 25 declarations from aggrieved employees and interviewed over 100 individuals. (*Id*. at ¶ 35.) During the arbitration proceedings, both sides conducted depositions and written discovery continued once the PAGA litigation resumed. (*Id*. at ¶¶ 36-37.) The parties also engaged in four mediations before they successfully settled all the remaining claims. (*Id*. at ¶¶ 38-41.) Where, as here "[C]lass [C]ounsel possess[es] a sufficient understanding of the issues involved and the strengths and weaknesses of the case," this factor favors settlement. *Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).

**5. Experience and Views of Counsel**

This factor weighs in favor of approval, as the parties are represented by competent and experienced counsel. (Dkt. No. 190-1, Humphrey Decl. at ¶¶ 4-7; Dkt. No. 190-2, Sagafi Decl. at ¶¶ 4-6, 12-19.) Plaintiffs' counsel represents that they have extensive experience in employment litigation and wage and hour class, representative, and collective actions. (*Id*.)

**6. Presence of a Government Participant**

Plaintiff provided notice of the proposed settlement to the LWDA in accordance with PAGA requirements. The LWDA has not intervened or commented on the proposed settlement. Accordingly, this factor is neutral.

***

After evaluating the *Hanlon* factors, the Court finds the settlement is fair and reasonable in light of PAGA's policy goals of "benefit[ting] the public by augmenting the state's enforcement

capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *O'Connor*, 201 F. Supp. 3d at 1132–33. Further, the Court does not find the award to be "unjust, arbitrary and oppressive, or confiscatory" under California Labor Code § 2699(e)(2). The Court therefore GRANTS the motion as to the PAGA penalties, approves the PAGA settlement administration costs, and appoints ILYM Group as Settlement Administrator.

**II. Attorneys' Fees and Costs**

While PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs," Cal. Labor Code § 2699(g)(1), it "does not provide a specific standard for evaluating attorney's fees in connection with a settlement of PAGA claims." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *6 (N.D. Cal. Aug. 25, 2017). However, the "lodestar method is a well-established method for determining the reasonableness of an attorneys' fee award and has been used by courts to assess attorneys' fees in connection with PAGA settlements." *Cresci v. Cox Auto. Corp. Servs., Inc.*, No. 22-CV-06832 VAP SKx, 2021 WL 2954086, at *5 (C.D. Cal. May 5, 2021) (cleaned up); *see also PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), as modified (June 2, 2000) ("the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.") (cleaned up).

**A. The Lodestar Method**

The lodestar figure consists of "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp*, 22 Cal. 4th at 1095. A reasonable hourly rate is defined as "that prevailing in the community for similar work." *Id*. As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

Plaintiffs attest that their lodestar fees are $1,881,305. (Dkt. No. 202-3, Humphrey Decl. at ¶ 8 (attesting to a lodestar of $919,106 for Christina Humphrey Law, P.C.); Dkt. No. 202-1, Second Supp. Sagafi Decl. at ¶ 3 (attesting to a lodestar of $928,812.75 for Outten & Golden);

United States District Court
Northern District of California

Dkt. No. 202-5, Gundzik Decl. at ¶ 18 (attesting to a lodestar of $33,387.50 for Gundzik & Gundzik).[2]) Plaintiffs seek $600,000 in fees or 40 percent of the gross settlement amount which they say represents a .31 multiplier. Upon review of Plaintiffs' request for attorneys' fees, the Court had several concerns. (Dkt. No. 199.) Plaintiffs thereafter filed a second supplemental brief with supporting declarations which address the Court's concerns. (Dkt. No. 201-2.) In particular, Plaintiffs have clarified the amount of attorneys' fees and costs received in the individual settlements, the work performed by Gundzik & Gundzik, and the basis and support for the hourly rates sought for each of the firms.

**1. Reasonable Rate**

To determine whether counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum*, 24 Cal. 4th at 1133. "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty*., 815 F.2d 1258, 1263 (9th Cir. 1987). In addition, Civil Local Rule 54-5(b)(3) requires the party seeking fees to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

"Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). Counsel seeks hourly rates of $800-990 for partners (including primary billers Mr. Sagafi and Ms. Humphrey), $675-725 for the partners at Gundzik & Gundzik; $525-325 for associates, and $275-300 for paralegals. (Dkt. No.

---

[2] With their second supplemental brief, Plaintiffs revised their initial lodestar figure of $2,065,282 (Dkt. No. 190 at 27) down to $1,881,305 because (1) Outten & Golden's lodestar was adjusted upward from $890,131.00 to $928,812.75 to reflect 2022 hourly rates; and (2) Christina Humphrey Law, P.C.'s lodestar was adjusted downward from $1,141,763 to $919,106 to reflect hourly rates approved by other courts. (Dkt. No. 201-2 at 8 n.5.)

202-1 at ¶¶ 2-3; Dkt. No. 190-1 at ¶ 50; 202-3 at ¶ 7; Dkt. No. 202-5 at ¶ 18.) The rates requested in this case are within the range of other hourly rates approved in wage and hour litigation in this district. *See Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2021 WL 66305, at *8 (N.D. Cal. Jan. 7, 2021) (collecting cases approving similar rates). Further, this and other courts within this district have approved Outten & Golden's hourly rates. *See, e.g.*, *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-CV-05813-JSC, 2022 WL 1189883, at *11 (N.D. Cal. Apr. 21, 2022) (approving Outten & Golden's hourly rates); *del Toro Lopez v. Uber Techs., Inc.*, No. 4:17-cv06255-YGR, 2018 WL 5982506, at *4 (N.D. Cal. Nov. 14, 2018) ("[Outten & Golden LLP's] hourly rates, ranging from $250 to $850 for attorneys, are reasonable in light of the market for legal services of this type and quality."). While neither Ms. Humphrey nor Mr. Gundzik offer cases approving of their hourly rates, because their rates are consistent with those awarded in other wage and hour cases including to Mr. Sagafi's firm, the Court approves them here. (Dkt. No. 202-3, Supp. Humphrey's Decl. at ¶ 7; Dkt. No. 202-5, Gundzik Decl. at ¶ 18.)

**2. Hours Reasonably Expended**

Counsel submitted declarations detailing the numbers of hours spent engaging in particular categories of work. (Dkt. No. 190-2, Sagafi Decl. at ¶ 44 (attesting to 1,652.9 hours); Dkt. No. 190-1 at ¶ 52 (attesting to 1,551.71 hours); Dkt. No. 202-5, Gundzik Decl. at ¶¶ 12-18 (attesting to 46.30 hours).) The information submitted by counsel is sufficiently detailed to reflect the hours reasonably expended litigating this PAGA action. Further, the Court is persuaded that counsels' time spent litigation this action cannot be parsed between the time spent on the "class" portion of the case and that spend on the PAGA litigation. (Dkt. No. 193 at 7-8.)

**3. Lodestar Calculation**

Plaintiffs attest that their lodestar fees are $1,881,305 based on more than 3,000 hours of work. (Dkt. No. 191-2, Sagafi Decl. at ¶ 45; Dkt. No. 201-2 at 8.) Thus, the $600,000 sought in fees here represents a negative multiplier of approximately .31. The Court has considered the information provided regarding counsels' recovery in the individuals settlements and concludes that it does not alter the reasonableness of the lodestar sought here. (Dkt. No. 201-2 at 8; Dkt. 201-3 at ¶ 4.)

United States District Court
Northern District of California

Accordingly, the Court finds that Plaintiffs' request for $600,000 in attorneys fees—which is less than a third of their lodestar—is reasonable.

**C. Litigation Costs**

Plaintiffs also seek $180,000 of their $180,821 actual litigation costs which includes

> investigative costs in interviewing former employees and gathering declarations, expert costs (statistician) for trial and mediations, mediation fees from four different mediations, deposition transcripts, database management fees, court call fees, copying costs, filing and attorney service fees, subpoena fees, PACER costs, and some minor travel costs earlier in the case for mediations.

(Dkt. No. 190-2, Sagafi Decl. at ¶ 47; Dkt. No. 190-1, Humphrey Decl. at ¶ 52; see also Dkt. No. 193-1, Sup. Sagafi Decl. at ¶ 4; Dkt. No. 202-5, Gundzik Decl at ¶ 19.) Plaintiffs have clarified that their individual settlements did not include any costs. (Dkt. No. 201-2 at 7.)

Accordingly, the Court finds that Plaintiffs request for $180,000 in out-of-pocket litigation costs is reasonable.

**III. Individual Service Awards**

Plaintiffs also request individual service awards of $10,000 for each of the named plaintiffs. However, Plaintiffs have not identified any cases *analyzing* whether incentive awards are appropriate in PAGA-only settlements. (Dkt. No. 190 at 26 (citing *Abelar v. Am. Residential Servs., L.L.C.*, No. 19-00726 JAK JPR(x), 2019 WL 6054607, at *6 (C.D. Cal. Nov. 14, 2019) (approving requested $5,000 incentive award to the named plaintiff in a PAGA action without analysis)).) In evaluating a request for a service award (also referred to as an "incentive award") in class action settlement approvals, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The decision to approve an incentive award is a matter within the court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Plaintiffs insist incentive awards are appropriate here because of the risks they incurred and the time they spent litigating this action. The Court disagrees.

First, none of the Plaintiffs are current employees and Plaintiffs Whitworth, Frias, and

Carranza all obtained individual settlements. (Dkt. No. 190-1, Humphrey Decl. at ¶ 40; Dkt. No. 193 at 10.) While Plaintiffs emphasize that their releases only covered claims up through their settlement date, *none* of the individually settling Plaintiffs were still working for Defendants at the time of their settlement. (Dkt. No. 193 at 10.)

Second, Mr. Arguelles, the only plaintiff without an individual settlement, only worked for Defendants for six months, was never deposed, and did not attend any of the mediations. (Dkt. No. 190-6.)

Third, Plaintiffs estimate they spent between 20 to 100 hours exchanging emails and phone calls with counsel, responding to discovery, and preparing for and attending their depositions (in the case of Whitworth, Frias, and Carranza). (Dkt. No. 190-3, Whitworth Decl. at ¶¶ 7-9 (estimating 50 hours of work); Dkt. No. 190-4, Frias Decl. at ¶¶ 7-9 (estimating 50 hours of work); Dkt. No. 190-5, Carazza Decl. at ¶¶ 7-9 (estimating 100 hours of work); Dkt. No. 190-6, Arguelles Decl. at ¶¶ 7-9 (estimating 20 hours of work).) While all were available during the mediations, none attended. An incentive award of $10,000 each would amount to an award of between $100 and $500 per hour of work performed by these Plaintiffs.

Finally, paying individuals for bringing a PAGA claim—particularly where they have already obtained an individual settlement or have had minimal participation in the litigation—runs afoul of the purpose of PAGA. *See Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009) ("the act authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations … an action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.") (cleaned up).

Accordingly, the Court declines to award Plaintiffs an incentive award in this PAGA action.

**IV. *Cy Pres* Award**

"District courts may approve settlements with *cy pres* provisions that affect only a portion of the total settlement fund." *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. 2021). Here, uncashed checks will be distributed to the *cy pres*. (Dkt. No. 190-1, Settlement Agreement at § V.4(a).) "Not just any worthy recipient can qualify as an appropriate

*cy pres* beneficiary. To avoid the many nascent dangers to the fairness of the distribution process, we require that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (cleaned up); see also PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements ("If the settlement contemplates a *cy pres* award, the parties should identify their chosen *cy pres* recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members. The parties should also identify any relationship they or their counsel have with the proposed *cy pres* recipients.") (last visited March 31, 2023)

The parties initially designated Legal Services for Children and Alliance for Children's Rights at the cy pres. (Dkt. No. 190-1, Settlement Agreement at § V.4(a).) However, after the Court requested supplemental briefing regarding the appropriateness of this *cy pres* beneficiary, the parties amended the settlement agreement to specify that California Rural Legal Assistance, Inc. (CLRA), is the *cy pres* beneficiary. (Dkt. No. 193-1 at ¶ 3.) Plaintiffs insist that CLRA is an appropriate cy pres beneficiary "[b]ecause CRLA's work includes representation in the legal areas of employment and labor, Programs, Cal. Rural Legal Assistance, https://crla.org/programs (last visited March 3, 2023), CRLA's work is 'related to the subject matter of the lawsuit and the class members' claims.'" (Dkt. No. 193 at 5 (quoting Procedural Guidance for Class Action Settlements, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited March 3, 2023)).) The Court finds that California Rural Legal Services is an appropriate *cy pres* beneficiary given its labor and employment work.

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion for approval of this PAGA representative action settlement is GRANTED. Plaintiffs' request for attorneys' fees and costs, and service awards is GRANTED IN PART and DENIED IN PART.

While this is not a class action, given the distribution to the Aggrieved Employees, the Court orders counsel to comply with the Northern District's Procedural Guidance for Class Action Settlements requirement that "[w]ithin 21 days after the distribution of the settlement funds and

United States District Court
Northern District of California

payment of attorneys' fees," counsel file "a Post-Distribution Accounting" that provides the following, to the extent applicable:

> The total settlement fund, the total number of class members, …the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each *cy pres* recipient, the administrative costs, the attorneys' fees and costs,.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id*.

The Court GRANTS Plaintiffs' administrative motion to seal. (Dkt. No. 201.)

This Order disposes of Docket No. 190.

**IT IS SO ORDERED.**

Dated: May 1, 2023

JACQUELINE SCOTT CORLEY
United States District Judge